# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

ESTELGIA, LLC,

       Plaintiff,

vs.

PLUME DESIGN, INC.

       Defendant.

Civil Action No.: _____

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Estelgia, LLC ("Estelgia") brings this action against Plume Design, Inc. ("Plume" or "Defendant"), and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action for patent infringement (hereinafter the "Action"), brought under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, seeking damages and other relief arising out of Plume's infringement of United States Patent Nos. 7,936,714 ("'714 Patent"), 11,246,016 ("'016 Patent"), 10,735,973 ("'973 Patent"), 10,531,518 ("'518 Patent"), 9,775,164 ("'164 Patent") and 9,277,591 ("'591 Patent") (collectively, the "Asserted Patents"). This action also seeks relief in the form of a declaratory judgment, under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

2. Estelgia owns the entire right, title, and interest in and to each of the Asserted Patents. The Asserted Patents were the product of the research and development activities of Netgear, Inc. ("Netgear"), a leading global developer and supplier of wireless networking devices, and Estelgia is the owner of the Asserted Patents by assignment. By developing its technology

and patents, Netgear has become an industry leader in the wireless networking industry, particularly with regard to home and consumer Wi-Fi networks and devices.

3.    Estelgia asserts that Plume infringes each Asserted Patent by, without Estelgia's authorization, making, using, offering to sell, and selling in, and/or importing into the United States certain wireless communications devices, including Wi-Fi routers, Wi-Fi devices, mesh Wi-Fi network devices, and hardware and software components thereof.

## THE PARTIES

4.    Plaintiff Estelgia is a Delaware corporation with its principal place of business at 8 The Green #21452 Dover, DE 19901.

5.    On information and belief, Defendant Plume Design, Inc. ("Plume") is a Delaware corporation with headquarters at 325 Lytton Avenue, Suite 200, Palo Alto, CA 94301.

6.    Plume designs, makes, manufactures, advertises, distributes, uses, offers to sell, sells, imports into the United States, and/or instructs others regarding the making, use, sale, or importation of certain Wi-Fi routers, Wi-Fi devices, mesh Wi-Fi network devices, and hardware and software components thereof in the United States, including in this Judicial District.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over Estelgia's claims of infringement of the Asserted Patents pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (action arising under an Act of Congress relating to patents).  The claims in this Action, including the declaratory judgment, arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.  In the alternative, this Court has subject matter jurisdiction over Estelgia's declaratory judgment claim pursuant to 28 U.S.C. § 1367(a) because it is so related to the patent claims in this action that it forms part of the same case or controversy.

8.     The Court has personal jurisdiction over Plume because Plume is subject to general and specific jurisdiction in the state of Delaware.  Plume is subject to personal jurisdiction at least because Plume is a Delaware corporation and resides in this District.  Plume has made sufficient minimum contacts with Delaware such that the maintenance of this suit does not offend traditional notions of fair play and substantial justice.

9.     Moreover, exercise of personal jurisdiction comports with Plume's rights under the Due Process Clause of the United States Constitution.  By electing incorporating under the laws of Delaware, Plume has purposefully availed itself of the privilege of Delaware corporate laws such that it should reasonably anticipate being haled into court here.

10.     Venue in this district is proper under 28 U.S.C. §§ 1391 and 1400(b), at least because Plume is incorporated in the State of Delaware and is subject to personal jurisdiction in this Judicial District.

## FACTUAL ALLEGATIONS

### A.     Background

11.     The Asserted Patents involve significant advancements in wireless communications devices, including Wi-Fi routers, Wi-Fi devices, mesh Wi-Fi network devices, and hardware and software components thereof, and methods of wirelessly communicating.  Estelgia is the owner of the Asserted Patents by assignment.

12.     The Asserted Patents are generally directed to novel and non-obvious wireless communications devices and methods of wireless communications that provide technical advantages such as improved and/or more reliable wireless communication to, for example, increase wireless network bandwidth, reduce wireless network interference, and reduce mobile device power consumption.

**B.    The Asserted Patents**

13.    The '714 Patent is entitled "SPECTRUM ALLOCATION SYSTEM AND METHOD FOR MULTI-BAND WIRELESS RF DATA COMMUNICATIONS," and issued on May 3, 2011, to inventors Randy J. Karr, Jean-Francois Grenon, and Frank D. Cole.  *See* Exhibit 1, '714 Patent.  The '714 Patent issued from Application No. 10/095,307, filed on March 11, 2002.  *Id*.  Estelgia owns the entire right, title, and interest in and to the '714 Patent.

14.    The '016 Patent is entitled "CONTROLLING CHANNEL USAGE IN A WIRELESS NETWORK," and issued on February 8, 2022, to inventors Joseph Amalan Arul Emmanuel and Peiman Amini.  *See* Exhibit 2, '016 Patent.  The '016 Patent issued from Application No. 16/791,782, filed on February 14, 2020.  *Id.*  Estelgia owns the entire right, title, and interest in and to the '016 Patent.

15.    The '973 Patent is entitled "DUAL BAND LTE SMALL CELL," and issued on August 4, 2020, to inventor Michael Clegg.  *See* Exhibit 3, '973 Patent.  The '973 Patent issued from Application No. 15/601,485, filed on May 22, 2017.  *Id.*  Estelgia owns the entire right, title, and interest in and to the '973 Patent.

16.    The '518 Patent is entitled "MULTI RADIO WIRELESS LAN NETWORKS," and issued on January 7, 2020, to inventors Peiman Amini, Joseph Amalan Arul Emmanuel, and Shun-Liang Yu.  See Exhibit 4, '518 Patent.  The '518 Patent issued from Application No. 15/879,400, filed on January 24, 2018.  *Id.*  Estelgia owns the entire right, title, and interest in and to the '518 Patent.

17.    The '164 Patent is entitled "AUTOMATIC WIRELESS NETWORK CHANNEL SELECTION," and issued on September 26, 2017, to inventors Peiman Amini and Joseph Amalan Arul Emmanuel.  *See* Exhibit 5, '164 Patent.  The '164 Patent issued from Application No.

14/562,493, filed on December 5, 2014. *Id.* Estelgia owns the entire right, title, and interest in and to the '164 Patent.

18.    The '591 Patent is entitled "CHANNEL STEERING FOR IMPLEMENTING COEXISTENCE OF MULTIPLE HOMOGENEOUS RADIOS," and issued on March 1, 2016, to inventors Peiman Amini, Arms Yongyuth, and Joseph Amalan Arul Emmanuel. *See* Exhibit 6, '591 Patent. The '591 Patent issued from Application No. 14/089,680, filed on November 25, 2013. *Id.* Estelgia owns the entire right, title, and interest in and to the '591 Patent.

19.    Estelgia, as the owner of all rights, title, and interest in and to the Asserted Patents, possesses all rights to sue and recover past and future damages for infringement of the Asserted Patents.

**C.    The Accused Products and Infringing Activities**

20.    Plume has, without Estelgia's authority, made, used, offered to sell, sold, imported into the United States, and/or instructed others regarding the making, use, sale, or importation into the United States of certain devices that perform the techniques claimed in the Asserted Patents, such as Wi-Fi routers, Wi-Fi devices, mesh Wi-Fi network devices, hardware and software components thereof, and/or other suitable wireless communications devices that directly infringe (literally and/or under the doctrine of equivalents), induce, and/or contribute to the infringement of one or more claims of each of the Asserted Patents.

21.    Plume also, without Estelgia's authority, continues to make, use, offer to sell, sell, import into the United States, and/or instruct others regarding the making, use, sale, or importation into the United States of certain devices that perform the techniques claimed in the Asserted Patents, such as Wi-Fi routers, Wi-Fi devices, mesh Wi-Fi network devices, hardware and software components thereof, and/or other suitable wireless communications devices that directly infringe

(literally and/or under the doctrine of equivalents), induce and/or contribute to the infringement of one or more claims of each of the Asserted Patents.

22.     Plume offers several infringing wireless communications devices including, but not limited to Plume's SuperPod, SuperPod6, SuperPod with WiFi 6E, SuperPod Aon with WiFi 6, and SuperPod Aon with WiFi 6 + LTE alone or in combination with HomePass or WorkPass (collectively the "Plume Accused Products").[1]

23.     Plume's infringing activities and/or Accused Products violate one or more subsections of 35 U.S.C. § 271, including but not limited to §§ 271(a), (b), and (c).

24.     As noted below and detailed in the claim charts attached as Exhibits 7-12[2] to this Complaint, each element of at least one claim of each of the Asserted Patents is literally present in the Accused Products and/or the methods performed by those products.  To the extent that any element is not literally present or practiced, each such element is present under the doctrine of equivalents because the Accused Product performs substantially the same function in substantially the same way to achieve substantially the same result, and any differences between the Accused Product and such claim element are insubstantial.

### D.     Plume's Knowledge of the Asserted Patents

25.     At a minimum, Plume had knowledge of the Asserted Patents and has been aware that the Accused Products infringe the Asserted Patents since at least as early as the filing of Estelgia's parallel complaint filed at the International Trade Commission ("ITC") alleging infringement of the Asserted Patents and/or the filing date of this Complaint.

---

[1] *See, e.g.,* https://support.plume.com/s/article/SuperPod-Technical-Specifications?language=en_US
[2] The numbered exhibits cited within Exhibits 7-12 of this Complaint refer to exhibits to Estelgia's complaint filed in a parallel ITC case alleging Plume infringes the Asserted Patents.

### E.     Claims for Patent Infringement

26.     The allegations provided below, including through the claim charts accompanying this Complaint, are exemplary and without prejudice to infringement contentions provided pursuant to the Court's scheduling order and local rules.  In providing these allegations, Estelgia does not convey or imply any particular claim constructions or the precise scope of the claims. Estelgia's claim construction contentions regarding the meaning and scope of the claim terms will be provided under the Court's scheduling order and local rules.

27.     The below infringement allegations are based on currently available information and a reasonable investigation of the structure and operation of the Accused Products.  Estelgia reserves the right to modify this description, including, for example, on the basis of information that it obtains during discovery about the Accused Products.

28.     Estelgia has no products to mark. Estelgia has pled all statutory requirements to obtain pre-suit damages. Furthermore, Estelgia has asserted claims of infringement relating to method claims in the Asserted Patents, which have no requirement for marking.

### COUNT I:  INFRINGEMENT OF U.S. PATENT NO. 7,936,714

29.     Estelgia repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

30.     Plume has, without Estelgia's authority, made, used, offered to sell, sold, imported into the United States, and/or instructed others regarding the making, use, sale, or importation of certain wireless communications devices that directly infringe (literally or under the doctrine of equivalents), induce the infringement of, and/or contributes to the infringement of, one or more claims of the '714 Patent.

31.    Plume also, without Estelgia's authority, continues to make, use, offer to sell, sell, import into the United States, and/or instruct others regarding the making, use, sale, or importation of certain wireless communications devices that directly infringe (literally or under the doctrine of equivalents) and/or induce the infringement of one or more claims of the '714 Patent.

32.    Plume's infringing activities violate one or more subsections of 35 U.S.C. § 271.

33.    Claims 25-32 of the '714 Patent were disclaimed under 37 CFR § 1.321(a).  The remaining claims of the '714 Patent are valid and enforceable.

34.    Plume infringes at least one claim of the '714 Patent.  For example, claim 13 of the '714 Patent recites:

> A method for increasing capacity of a wireless data communication system, said method comprising the steps of:
>
> transmitting, at a base station, data on a first frequency in a frequency band expected to experience low interference;
>
> receiving, at said base station, data on a second frequency in a frequency band expected to experience high interference;
>
> wherein said first frequency and said second frequency are separated by at least one octave; and
>
> wherein at least a portion of said receiving and at least a portion of said transmitting occur at the same time.

35.    On information and belief, Plume directly infringes in violation of 35 U.S.C. § 271(a) at least claims 13-14 of the '714 Patent, literally or under the doctrine of equivalents, by using the Accused Products in an infringing manner in the United States, including during Plume's testing, developing, or other operation of such products. This is shown in the exemplary claim chart attached as Exhibit 7, which provides details regarding Plume's infringement of claim 13 of the '714 patent.  As discussed above, Estelgia reserves its rights to modify, amend, and/or supplement its infringement claims in light of discovery and/or during subsequent proceedings,

for example, via infringement contentions provided pursuant to the Court's scheduling order and local rules.

36.     As Exhibit 7 demonstrates, Plume's use of the Accused Products satisfies each and every limitation of at least claim 13 of the '714 Patent.  Consequently, Plume directly infringes the '714 Patent through at least the manufacture, use, offers to sell, sale, and/or importation of the Accused Products and/or products incorporating the same.

37.     Additionally, on information and belief, Plume knowingly and intentionally induces users of one or more of the Accused Products to directly infringe one or more claims of the '714 Patent by configuring the Accused Products with all of the requisite hardware, software, documentation, and instructions to operate the Accused Products in the infringing manner.  Plume also induces users to infringe by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to Plume employees who test and operate Accused Products at the direction of Plume, to make, use (including testing those devices and methods), sell, offer to sell, or import one or more of the Accused Products and/or products incorporating same.  On information and belief, as discussed above, Plume was aware of the '714 Patent or acted with willful blindness as to its existence, and Plume thus knew or should have known, and intended, that its conduct would result in direct infringement.

38.     Furthermore, on information and belief, Plume induces infringement of the '714 Patent by customers and distributors by providing its customers and distributors with the requisite hardware, software, documentation, and instructions to encourage and instruct its customers and distributors to operate the Accused Products in an infringing manner such as set forth in Exhibit 7.[3]  For example, Plume provides significant support and documentation, such as

---

[3] *See, e.g.,* https://support.plume.com/s/?language=en_US

manuals, guides, webpages, and videos that demonstrate how the Accused Products can be used in an infringing manner.  Through its webpages, manuals, and other documentation promoting its products, including such documents that are cited in Exhibit 7, Plume encourages and instructs its customers to use its products in a manner that infringes the '714 Patent.

39.     Additionally, on information and belief, Plume contributes to the infringement of the '714 Patent by supplying or causing to be supplied components, materials, or apparatuses that are made or adapted for use in manner that Plume knows to be infringing at least claim 13 of the '714 Patent and does not have a substantial non-infringing use.

40.     In addition and in the alternative, by at least the date when Estelgia filed its parallel Complaint at the ITC alleging infringement of the '714 Patent and/or the date on which this Complaint was filed, Estelgia disclosed the existence of the '714 Patent to Plume and identified Plume's infringing activities.  Thus, Plume had knowledge of the '714 Patent and that their activities infringe the '714 Patent since at least the date when Estelgia filed its parallel Complaint at the ITC alleging infringement of the '714 Patent, and/or the date on which this Complaint was filed.

41.     Accordingly, on information and belief, Plume's acts of infringement of the '714 Patent have been committed and are being committed with full knowledge of Estelgia's patent rights and full knowledge of infringement.  Plume's wrongful conduct thus constitutes willful, intentional, and deliberate infringement, entitling Estelgia to enhanced damages.

42.     On information and belief, Plume has profited from and will continue to profit from its infringing activities.  Estelgia has been and will continue to be damaged and irreparably harmed by Plume's infringing activities.  As a result, Estelgia is entitled to injunctive relief and damages adequate to compensate it for such infringement, in no event less than a reasonable royalty, in

accordance with 35 U.S.C. §§ 271, 281, 283, and 284.  The amount of monetary damages Plume's

acts of infringement have caused to Estelgia cannot be determined without an accounting.

43.    The harm to Estelgia from Plume's ongoing infringing activity is irreparable,

continuing, and not fully compensable by money damages, and will continue unless Plume's

infringing activities are enjoined.

## COUNT II:  INFRINGEMENT OF U.S. PATENT NO. 11,246,016

44.    Estelgia repeats and realleges each and every allegation set forth in the preceding

paragraphs as if fully set forth herein.

45.    Plume has, without Estelgia's authority, made, used, offered to sell, sold, imported

into the United States, and/or instructed others regarding the making, use, sale, or importation of

certain wireless communications devices that directly infringe (literally or under the doctrine of

equivalents), induce the infringement of, and/or contributes to the infringement of, one or more

claims of the '016 Patent.

46.    Plume also, without Estelgia's authority, continues to make, use, offer to sell, sell,

import into the United States, and/or instruct others regarding the making, use, sale, or importation

of certain wireless communications devices that directly infringe (literally or under the doctrine of

equivalents) and/or induce the infringement of one or more claims of the '016 Patent.

47.    Plume's infringing activities violate one or more subsections of 35 U.S.C. § 271.

48.    The claims of the '016 Patent are valid and enforceable.

49.    Plume infringes at least one claim of the '016 Patent.  For example, claim 1 of the

'016 Patent recites:

A method comprising:

identifying a first communication channel of a plurality of communication
channels to use as a backhaul channel for communication between an AP
Wi-Fi device and a satellite Wi-Fi device;

identifying a second communication channel of the plurality of communication channels as a fronthaul channel for communication between a client Wi-Fi device and any of the AP Wi-Fi device or the satellite Wi-Fi device;

receiving, via the backhaul channel, data indicative of interference characteristics at any of the AP Wi-Fi device or the satellite Wi-Fi device;

determining to use a third communication channel of the plurality of communication channels as the fronthaul channel for communication between the client Wi-Fi device and any of the AP Wi-Fi device or the satellite Wi-Fi device based on the data indicative of the interference characteristics at any of the AP Wi-Fi device or the satellite Wi-Fi device; and

sending a message to the client Wi-Fi device, that causes the client Wi-Fi device to switch from the second communication channel to the third communication channel to facilitate communication between the client Wi-Fi device any of the AP Wi-Fi device or the satellite Wi-Fi device.

50.    On information and belief, Plume directly infringes in violation of 35 U.S.C. § 271(a) at least claim 1 the '016 Patent, literally or under the doctrine of equivalents, by using the Accused Products in an infringing manner in the United States, including during Plume's testing, developing or other operation of such products. This is shown in the exemplary claim chart attached as Exhibit 8, which provides details regarding Plume's infringement of claim 1 of the '016 Patent. As discussed above, Estelgia reserves its rights to modify, amend and/or supplement its infringement claims, including their full scope, during subsequent proceedings, for example, via infringement contentions provided pursuant to the Court's scheduling order and local rules.

51.    As Exhibit 8 demonstrates, Plume's use of the Accused Products satisfies each and every limitation of at least claim 1 and Plume's Accused Products satisfy each and every limitation of at least claims 13 and 17 of the '016 Patent. Consequently, Plume directly infringes the '016 Patent through at least the manufacture, use, offers to sell, sale, and/or importation of the Accused Products and/or products incorporating the same.

52.     Additionally, on information and belief, Plume knowingly and intentionally induces users of one or more of the Accused Products to directly infringe one or more claims of the '016 Patent by configuring the Accused Products with all of the requisite hardware, software, documentation, and instructions to operate the Accused Products in the infringing manner. Plume also induces users to infringe by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to Plume employees who test and operate Accused Products at the direction of Plume, to make, use (including testing those devices and methods), sell, offer to sell, or import one or more of the Accused Products and/or products incorporating same. On information and belief, as discussed above, Plume was aware of the '016 Patent or acted with willful blindness as to its existence, and Plume thus knew or should have known, and intended, that its conduct would result in direct infringement.

53.     Furthermore, on information and belief and as discussed above, Plume induces infringement of the '016 Patent by customers and distributors by providing its customers and distributors with the requisite hardware, software, documentation, and instructions to encourage and instruct its customers and distributors to operate the Accused Products in an infringing manner such as set forth in Exhibit 8. [4] For example, Plume provides significant support and documentation, such as manuals, guides, webpages, and videos that demonstrate how the Accused Products can be used in an infringing manner. Through its webpages, manuals, and other documentation promoting its products, including such documents that are cited in Exhibit 8, Plume encourages and instructs its customers to use its products in a manner that infringes the '016 Patent.

54.     Additionally, on information and belief, Plume contributes to the infringement of the '016 Patent by supplying or causing to be supplied components, materials, or apparatuses that

---

[4] *See, e.g.,* https://support.plume.com/s/?language=en_US

are made or adapted for use in manner that Plume knows to be infringing at least claims 1, 13, and 17 of the '016 of the Patent and does not have a substantial non-infringing use.

55.    In addition and in the alternative, by at least the date when Estelgia filed its parallel Complaint at the ITC alleging infringement of the '016 Patent and/or the date on which this Complaint was filed, Estelgia disclosed the existence of the '016 Patent to Plume and identified Plume's infringing activities.   Thus, Plume had knowledge of the '016 Patent and that their activities infringe the '016 Patent since at least the date when Estelgia filed its parallel Complaint at the ITC alleging infringement of the '016 Patent, and/or the date on which this Complaint was filed.

56.    Accordingly, on information and belief, Plume's acts of infringement of the '016 Patent have been committed and are being committed with full knowledge of Estelgia's patent rights and full knowledge of infringement.   Plume's wrongful conduct thus constitutes willful, intentional, and deliberate infringement, entitling Estelgia to enhanced damages.

57.    On information and belief, Plume has profited from and will continue to profit from its infringing activities.   Estelgia has been and will continue to be damaged and irreparably harmed by Plume's infringing activities.   As a result, Estelgia is entitled to injunctive relief and damages adequate to compensate it for such infringement, in no event less than a reasonable royalty, in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.   The amount of monetary damages Plume's acts of infringement have caused to Estelgia cannot be determined without an accounting.

58.    The harm to Estelgia from Plume's ongoing infringing activity is irreparable, continuing, and not fully compensable by money damages, and will continue unless Plume's infringing activities are enjoined.

## COUNT III:  INFRINGEMENT OF U.S. PATENT NO. 10,735,973

59.    Estelgia repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

60.    Plume has, without Estelgia's authority, made, used, offered to sell, sold, imported into the United States, and/or instructed others regarding the making, use, sale, or importation of certain wireless communications devices that directly infringe (literally or under the doctrine of equivalents), induce the infringement of, and/or contributes to the infringement of, one or more claims of the '973 Patent.

61.    Plume also, without Estelgia's authority, continues to make, use, offer to sell, sell, import into the United States, and/or instruct others regarding the making, use, sale, or importation of certain wireless communications devices that directly infringe (literally or under the doctrine of equivalents) and/or induce the infringement of one or more claims of the '973 Patent.

62.    Plume's infringing activities violate one or more subsections of 35 U.S.C. § 271.

63.    The claims of the '973 Patent are valid and enforceable.

64.    Plume infringes at least one claim of the '973 Patent.  claim 1 of the '973 Patent recites:

A wireless communication method, the method comprising:

identifying, at an access point, a plurality of User Equipments (UEs) sharing access to each of a first unlicensed communication band and a second unlicensed communication band on which the access point operates;

prioritizing communication with the plurality of UEs based, at least in part, on service requirements of the plurality of UEs;

measuring, at the access point, a channel condition on one or more channels in the first unlicensed communication band and on one or more channels in the second unlicensed communication band;

prioritizing the one or more channels in the first unlicensed communication band and the second unlicensed communication band based on the measured channel condition;

assigning, based, at least in part, on the prioritized communication and the prioritized channels, at least one channel having a higher priority to a first UE having a higher priority for communication;

assigning, based, at least in part, on the prioritized communication and the prioritized channels, at least one channel having a lower priority to a second UE having a lower priority for communication; and

communicating with the first UE on the at least one channel having the higher priority.

65.    On information and belief, Plume directly infringes in violation of 35 U.S.C. § 271(a) at least claim 1 of the '973 Patent, literally or under the doctrine of equivalents, by using the Accused Products in an infringing manner in the United States, including during Plume's testing, developing, or other operation of such products.  This is shown in the exemplary claim chart attached as Exhibit 9, which provides details regarding Plume's infringement of claim 1 of the '973 Patent.  As discussed above, Estelgia reserves its rights to modify, amend and/or supplement its infringement claims in light of discovery and/or during subsequent proceedings, for example, via infringement contentions provided pursuant to the Court's scheduling order and local rules.

66.    As Exhibit 9 demonstrates, Plume's use of the Accused Products satisfies each and every limitation of at least claim 1 and Plume's Accused Products satisfy each and every limitation of at least claim 8 of the '973 Patent.  Consequently, Plume directly infringes the '973 Patent through at least the manufacture, use, offers to sell, sale, and/or importation of the Accused Products and/or products incorporating the same.

67.    Additionally, on information and belief, Plume knowingly and intentionally induces users of one or more of the Accused Products to directly infringe one or more claims of

the '973 Patent by configuring the Accused Products with all of the requisite hardware, software, documentation, and instructions to operate the Accused Products in the infringing manner. Plume also induces users to infringe by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to Plume employees who test and operate Accused Products at the direction of Plume, to make, use (including testing those devices and methods), sell, offer to sell, or import one or more of the Accused Products and/or products incorporating same. On information and belief, as discussed above, Plume was aware of the '973 Patent or acted with willful blindness as to its existence, and Plume thus knew or should have known, and intended, that its conduct would result in direct infringement.

68.    Furthermore, on information and belief and as discussed above, Plume induces infringement of the '973 Patent by customers and distributors by providing its customers and distributors with the requisite hardware, software, documentation, and instructions to encourage and instruct its customers and distributors to operate the Accused Products in an infringing manner such as set forth in Exhibit 9.[5] For example, Plume provides significant support and documentation, such as manuals, guides, webpages, and videos that demonstrate how the Accused Products can be used in an infringing manner. Through its webpages, manuals, and other documentation promoting its products, including such documents cited in Exhibit 9, Plume encourages and instructs its customers to use its products in a manner that infringes the '973 Patent.

69.    Additionally, on information and belief, Plume contributes to the infringement of the '973 Patent by supplying or causing to be supplied components, materials, or apparatuses that are made or adapted for use in manner that Plume knows to be infringing at least claims 1 and 8 of the '973 of the Patent and does not have a substantial non-infringing use.

---

[5] *See, e.g.,* https://support.plume.com/s/?language=en_US

70.    In addition and in the alternative, by at least the date when Estelgia filed its parallel Complaint at the ITC alleging infringement of the '973 Patent and/or the date on which this Complaint was filed, Estelgia disclosed the existence of the '973 Patent to Plume and identified Plume's infringing activities.  Thus, Plume had knowledge of the '973 Patent and that their activities infringe the '973 Patent since at least the date when Estelgia filed its parallel Complaint at the ITC alleging infringement of the '973 Patent and/or the date on which this Complaint was filed.

71.    On information and belief, Plume has profited from and will continue to profit from its infringing activities.  Estelgia has been and will continue to be damaged and irreparably harmed by Plume's infringing activities.  As a result, Estelgia is entitled to injunctive relief and damages adequate to compensate it for such infringement, in no event less than a reasonable royalty, in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.  The amount of monetary damages Plume's acts of infringement have caused to Estelgia cannot be determined without an accounting.

72.    The harm to Estelgia from Plume's ongoing infringing activity is irreparable, continuing, and not fully compensable by money damages, and will continue unless Plume's infringing activities are enjoined.

### COUNT IV:  INFRINGEMENT OF U.S. PATENT NO. 10,531,518

73.    Estelgia repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

74.    Plume has, without Estelgia's authority, made, used, offered to sell, sold, imported into the United States, and/or instructed others regarding the making, use, sale, or importation of certain wireless communications devices that directly infringe (literally or under the doctrine of

equivalents), induce the infringement of, and/or contributes to the infringement of, one or more claims of the '518 Patent.

75.    Plume also, without Estelgia's authority, continues to make, use, offer to sell, sell, import into the United States, and/or instruct others regarding the making, use, sale, or importation of certain wireless communications devices that directly infringe (literally or under the doctrine of equivalents) and/or induce the infringement of one or more claims of the '518 Patent.

76.    Plume's infringing activities violate one or more subsections of 35 U.S.C. § 271.

77.    The claims of the '518 Patent are valid and enforceable.

78.    Plume infringes at least one claim of the '518 Patent. For example, claim 7 of the '518 Patent recites:

> A communications system comprising:
>
> a processing unit;
>
> a wireless local area network (WLAN) module communicatively coupled to the processing unit, the WLAN module configured for communication on a plurality of non-overlapping subdivisions within a region of a communication band, each of the plurality of non-overlapping subdivisions encompassing one or more center frequencies and separated by a cut off region, wherein the communication band is the 5 GHz communication band and wherein the cutoff region separates non-overlapping subdivisions of the 5 GHz communication band; and
>
> a memory unit communicatively coupled to the processing unit, the memory unit including instructions stored thereon, which when executed by the processing unit cause the communications system to transmit and/or receive multi-path communications over the plurality of non-overlapping subdivisions within the region of a communication band using a multi-path communications protocol.

79.    On information and belief, Plume directly infringes in violation of 35 U.S.C. § 271(a) at least claim 7, because the Accused Products satisfy each and every limitation of this claim 7.  This is shown in the exemplary claim chart attached as Exhibit 10, which provides details regarding Plume's infringement of claim 7 of the '518 Patent.  As discussed above, Estelgia

reserves its rights to modify, amend, and/or supplement its infringement claims in light of discovery and/or during subsequent proceedings, for example, via infringement contentions provided pursuant to the Court's scheduling order and local rules.

80.     As Exhibit 10 demonstrates, the Accused Products satisfy each and every limitation of at least claim 7 of the '518 Patent.  Consequently, Plume directly infringes the '518 Patent through at least the manufacture, use, offers to sell, sale, and/or importation of the Accused Products and/or products incorporating the same.

81.     Additionally, on information and belief, Plume knowingly and intentionally induces users of one or more of the Accused Products to directly infringe one or more claims of the '518 Patent by configuring the Accused Products with all of the requisite hardware, software, documentation, and instructions to operate the Accused Products in the infringing manner.  Plume also induces users to infringe by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to Plume employees who test and operate Accused Products at the direction of Plume, to make, use (including testing those devices and methods), sell, offer to sell, or import one or more of the Accused Products and/or products incorporating same.  On information and belief, as discussed above, Plume was aware of the '518 Patent or acted with willful blindness as to its existence, and Plume thus knew or should have known, and intended, that its conduct would result in direct infringement.

82.     Furthermore, on information and belief and as discussed above, Plume induces infringement of the '518 Patent by customers and distributors by providing its customers and distributors with the requisite hardware, software, documentation, and instructions to encourage and instruct its customers and distributors to operate the Accused Products in an infringing manner

such as set forth in Exhibit 10. [6] For example, Plume provides significant support and documentation, such as manuals, guides, webpages, and videos that demonstrate how the Accused Products can be used in an infringing manner.  Through its webpages, manuals, and other documentation promoting its products, including such documents that are cited in Exhibit 10, Plume encourages and instructs its customers to use its products in a manner that infringes the '518 Patent.

83.    Additionally, on information and belief, Plume contributes to the infringement of the '518 Patent by supplying or causing to be supplied components, materials, or apparatuses that are made or adapted for use in manner that Plume knows to be infringing at least claim 7 of the '518 Patent and does not have a substantial non-infringing use.

84.    In addition and in the alternative, by at least the date when Estelgia filed its parallel Complaint at the ITC alleging infringement of the '518 Patent and/or the date on which this Complaint was filed, Estelgia disclosed the existence of the '518 Patent to Plume and identified Plume's infringing activities.  Thus, Plume had knowledge of the '518 Patent and that their activities infringe the '518 Patent since at least the date when Estelgia filed its parallel Complaint at the ITC alleging infringement of the '518 Patent, and/or the date on which this Complaint was filed.

85.    Accordingly, on information and belief, Plume's acts of infringement of the '518 Patent have been committed and are being committed with full knowledge of Estelgia's patent rights and full knowledge of infringement.  Plume's wrongful conduct thus constitutes willful, intentional, and deliberate infringement, entitling Estelgia to enhanced damages.

---

[6] *See, e.g.,* https://support.plume.com/s/?language=en_US

86.     On information and belief, Plume has profited from and will continue to profit from its infringing activities.  Estelgia has been and will continue to be damaged and irreparably harmed by Plume's infringing activities.  As a result, Estelgia is entitled to injunctive relief and damages adequate to compensate it for such infringement, in no event less than a reasonable royalty, in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.  The amount of monetary damages Plume's acts of infringement have caused to Estelgia cannot be determined without an accounting.

87.     The harm to Estelgia from Plume's ongoing infringing activity is irreparable, continuing, and not fully compensable by money damages, and will continue unless Plume's infringing activities are enjoined.

## COUNT V:  INFRINGEMENT OF U.S. PATENT NO. 9,775,164

88.     Estelgia repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

89.     Plume has, without Estelgia's authority, made, used, offered to sell, sold, imported into the United States, and/or instructed others regarding the making, use, sale, or importation of certain wireless communications devices that directly infringe (literally or under the doctrine of equivalents), induce the infringement of, and/or contributes to the infringement of, one or more claims of the '164 Patent.

90.     Plume also, without Estelgia's authority, continues to make, use, offer to sell, sell, import into the United States, and/or instruct others regarding the making, use, sale, or importation of certain wireless communications devices that directly infringe (literally or under the doctrine of equivalents) and/or induce the infringement of one or more claims of the '164 Patent.

91.     Plume's infringing activities violate one or more subsections of 35 U.S.C. § 271.

92.     The claims of the '164 Patent are valid and enforceable.

22

93.    Plume infringes at least one claim of the '164 Patent.  For example, claim 24 of the '164 Patent recites:

A method of channel selection, comprising:

collecting, by a wireless networking device, WLAN and non-WLAN interference information on a plurality of candidate channels, wherein the collected WLAN and non-WLAN interference information includes a table of radio receiving gain information or a table of radio transmitting gain information for WLAN and non-WLAN interference for each of the plurality of candidate channels;

determining a weighted grade for each of the plurality of candidate channels based on the collected WLAN and non-WLAN interference information, wherein the weighted grade includes a negative component based on an overlapping portion of a spectrum mask if the overlapping portion exceeds a threshold; and

selecting a channel among the plurality of candidate channels based on the weighted grades.

94.    On information and belief, Plume directly infringes in violation of 35 U.S.C. § 271(a) at least claim 24 of the '164 Patent, literally or under the doctrine of equivalents, by using the Accused Products in an infringing manner in the United States, including during Plume's testing, developing, or other operation of such products.  This is shown in the exemplary claim chart attached as Exhibit 11, which provides details regarding each Plume's infringement of claim 24 of the '164 Patent.  As discussed above, Estelgia reserves its rights to modify, amend and/or supplement its infringement claims during subsequent proceedings, for example, via infringement contentions provided pursuant to the Court's scheduling order and local rules.

95.    As Exhibit 11 demonstrates, Plume's use of the Accused Products satisfies each and every limitation of at least claim 24 of the '164 Patent.  Consequently, Plume directly infringes the '164 Patent through at least the manufacture, use, offers to sell, sale, and/or importation of the Accused Products and/or products incorporating the same.

96.     Additionally, on information and belief, Plume knowingly and intentionally induces users of one or more of the Accused Products to directly infringe one or more claims of the '164 Patent by configuring the Accused Products with all of the requisite hardware, software, documentation, and instructions to operate the Accused Products in the infringing manner.  Plume also induces users to infringe by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to Plume employees who test and operate Accused Products at the direction of Plume, to make, use (including testing those devices and methods), sell, offer to sell, or import one or more of the Accused Products and/or products incorporating same.  On information and belief, as discussed above, Plume was aware of the '164 Patent or acted with willful blindness as to its existence, and Plume thus knew or should have known, and intended, that its conduct would result in direct infringement.

97.     Furthermore, on information and belief and as discussed above, Plume induces infringement of the '164 Patent by customers and distributors by providing its customers and distributors with the requisite hardware, software, documentation, and instructions to encourage and instruct its customers and distributors to operate the Accused Products in an infringing manner such as set forth in Exhibit 11. [7] For example, Plume provides significant support and documentation, such as manuals, guides, webpages, and videos that demonstrate how the Accused Products can be used in an infringing manner.  Through its webpages, manuals, and other documentation promoting its products, including such documents that are cited in Exhibit 11, Plume encourages and instructs its customers to use its products in a manner that infringes the '164 Patent.

---

[7] *See, e.g.,* https://support.plume.com/s/?language=en_US

98.     Additionally, on information and belief, Plume contributes to the infringement of the '164 Patent by supplying or causing to be supplied components, materials, or apparatuses that are made or adapted for use in manner that Plume knows to be infringing at least claim 24 of the '164 of the Patent and does not have a substantial non-infringing use.

99.     In addition and in the alternative, by at least the date when Estelgia filed its parallel Complaint at the ITC alleging infringement of the '164 Patent and/or the date on which this Complaint was filed, Estelgia disclosed the existence of the '164 Patent to Plume and identified Plume's infringing activities.   Thus, Plume had knowledge of the '164 Patent and that their activities infringe the '164 Patent since at least the date when Estelgia filed its parallel Complaint at the ITC alleging infringement of the '164 Patent and/or the date on which this Complaint was filed.

100.     Accordingly, on information and belief, Plume's acts of infringement of the '164 Patent have been committed and are being committed with full knowledge of Estelgia's patent rights and full knowledge of infringement.   Plume's wrongful conduct thus constitutes willful, intentional, and deliberate infringement, entitling Estelgia to enhanced damages.

101.     On information and belief, Plume has profited from and will continue to profit from its infringing activities.   Estelgia has been and will continue to be damaged and irreparably harmed by Plume's infringing activities.   As a result, Estelgia is entitled to injunctive relief and damages adequate to compensate it for such infringement, in no event less than a reasonable royalty, in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.   The amount of monetary damages Plume's acts of infringement have caused to Estelgia cannot be determined without an accounting.

102.     The harm to Estelgia from Plume's ongoing infringing activity is irreparable, continuing, and not fully compensable by money damages, and will continue unless Plume's

infringing activities are enjoined.

## COUNT VI:  INFRINGEMENT OF U.S. PATENT NO. 9,277,591

103.    Estelgia repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

104.    Plume has, without Estelgia's authority, made, used, offered to sell, sold, imported into the United States, and/or instructed others regarding the making, use, sale, or importation of certain wireless communications devices that directly infringe (literally or under the doctrine of equivalents) induce the infringement of, and/or contributes to the infringement of,  one or more claims of the '591 Patent.

105.    Plume also, without Estelgia's authority, continues to make, use, offer to sell, sell, import into the United States, and/or instruct others regarding the making, use, sale, or importation of certain wireless communications devices that directly infringe (literally or under the doctrine of equivalents) and/or induce the infringement of one or more claims of the '591 Patent.

106.    Plume's infringing activities violate one or more subsections of 35 U.S.C. § 271.

107.    The claims of the '591 Patent are valid and enforceable.

108.    Plume infringes at least one claim of the '591 Patent.  For example, claim 1 of the '591 Patent recites:

>    A network device, comprising:
>
>    a plurality of wireless network circuits, each of the network circuits operating in a same radio frequency band; and
>
>    a coexistence controller coupled to the network circuits and configured to:
>
>    upon one or more client devices requesting for association, distribute the client devices to the network circuits based on a plurality of operating criteria,
>
>    wherein the network circuits are collocated on the network device.

109.    On information and belief, Plume directly infringes in violation of 35 U.S.C. § 271(a) at least claim 1, because the Accused Products satisfy each and every limitation of this claim.  This is shown in the exemplary claim chart attached as Exhibit 12, which provides details regarding Plume's infringement of claim 1 of the '591 Patent.  As discussed above, Estelgia reserves its rights to modify, amend and/or supplement its infringement claims in light of discovery and/or during subsequent proceedings, for example, via infringement contentions provided pursuant to the Court's scheduling order and local rules.

110.    As Exhibit 12 demonstrates, the Accused Products satisfy each and every limitation of at least claim 1 of the '591 Patent.  Consequently, Plume directly infringes the '591 Patent through at least the manufacture, use, offers to sell, sale, and/or importation of the Accused Products and/or products incorporating the same.

111.    Additionally, on information and belief, Plume knowingly and intentionally induces users of one or more of the Accused Products to directly infringe one or more claims of the '591 Patent by configuring the Accused Products with all of the requisite hardware, software, documentation, and instructions to operate the Accused Products in the infringing manner.  Plume

also induces users to infringe by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to Plume employees who test and operate Accused Products at the direction of Plume, to make, use (including testing those devices and methods), sell, offer to sell, or import one or more of the Accused Products and/or products incorporating same. On information and belief, as discussed above, Plume was aware of the '591 Patent or acted with willful blindness as to its existence, and Plume thus knew or should have known, and intended, that its conduct would result in direct infringement.

112.    Furthermore, on information and belief and as discussed above, Plume induces infringement of the '591 Patent by customers and distributors by providing its customers and distributors with the requisite hardware, software, documentation, and instructions to encourage and instruct its customers and distributors to operate the Accused Products in an infringing manner as set forth in Exhibit 12.[8] For example, Plume provides significant support and documentation, such as manuals, guides, webpages, and videos that demonstrate how the Accused Products can be used in an infringing manner. Through its webpages, manuals, and other documentation promoting its products, including such documents that are cited in Exhibit 12, Plume encourages and instructs its customers to use its products in a manner that infringes the '591 Patent.

113.    Additionally, on information and belief, Plume contributes to the infringement of the '591 Patent by supplying or causing to be supplied components, materials, or apparatuses that are made or adapted for use in manner that Plume knows to be infringing at least claim 1 of the '591 Patent and does not have a substantial non-infringing use.

114.    In addition and in the alternative, by at least the date when Estelgia filed its parallel Complaint at the ITC alleging infringement of the '591 Patent and/or the date on which this

---

[8] *See, e.g.,* https://support.plume.com/s/?language=en_US

Complaint was filed, Estelgia disclosed the existence of the '591 Patent to Plume and identified Plume's infringing activities. Thus, Plume had knowledge of the '591 Patent and that their activities infringe the '591 Patent since at least the date when Estelgia filed its parallel Complaint at the ITC alleging infringement of the '591 Patent and/or the date on which this Complaint was filed.

115.     Accordingly, on information and belief, Plume's acts of infringement of the '591 Patent have been committed and are being committed with full knowledge of Estelgia's patent rights and full knowledge of infringement. Plume's wrongful conduct thus constitutes willful, intentional, and deliberate infringement, entitling Estelgia to enhanced damages.

116.     On information and belief, Plume has profited from and will continue to profit from its infringing activities. Estelgia has been and will continue to be damaged and irreparably harmed by Plume's infringing activities. As a result, Estelgia is entitled to injunctive relief and damages adequate to compensate it for such infringement, in no event less than a reasonable royalty, in accordance with 35 U.S.C. §§ 271, 281, 283, and 284. The amount of monetary damages Plume's acts of infringement have caused to Estelgia cannot be determined without an accounting.

117.     The harm to Estelgia from Plume's ongoing infringing activity is irreparable, continuing, and not fully compensable by money damages, and will continue unless Plume's infringing activities are enjoined.

## COUNT VII:  DECLARATORY JUDGMENT OF NO LICENSING OBLIGATION REGARDING CLAIM 13 OF U.S. PATENT NO. 7,936,714

118.     Estelgia repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

119.     Estelgia acquired the '714 Patent from Netgear.

120.    On information and belief, Netgear was a member of the Wi-Fi Alliance when Estelgia acquired the '714 Patent.

121.    The Wi-Fi Alliance's IPR Policy states in Section 3.2 that members who participate in technical specifications agree to license "Necessary Claims" to Wi-Fi Alliance Members under the following terms:

SECTION 3.2.  LICENSING OF MEMBER INTELLECTUAL PROPERTY RIGHTS

(1) Any Member (or its Affiliate) who: (a) makes a Contribution to a Specification; or (b) Participates hereby agrees that, upon request and subject to Sections 3.2(2), 3.8, and 4.2(1)(c), it will grant to other Members, their Affiliates and any implementers of the Specification, under reasonable and nondiscriminatory terms (and on a royalty-free basis if the Member has so indicated under Section 4.2(1)(a)), a nonexclusive, nontransferable (except to a successor in interest of all or the relevant part of the business of such other Members, their Affiliates and any implementers), non-sublicensable, worldwide license under its Necessary Claims to allow such Members, their Affiliates and implementers to make, have made, use, import, offer to sell, lease, sell and otherwise distribute implementations compliant with all relevant required portions of such Specification.  It is acknowledged that references in this Policy

to a license agreement containing reasonable and nondiscriminatory terms may include a license agreement with reasonable defensive suspension provisions.  For the avoidance of doubt, this Section shall not apply to a Member (or its Affiliate) that reviews and/or approves the work of a Task Group solely in the course of its duties as a member of the Board (i.e., such Board member does not make a Contribution to the Specification, or Participate (as defined in Section 1(f)(i)).

(2) Each Member agrees that it will not transfer, and has not transferred, patents or patent applications having Necessary Claims for the purpose of circumventing this Section 3.2.  In the event of a transfer of patents or patent applications having Necessary Claims, the Member agrees to provide notice to the transferee of the patent disclosure and licensing declaration under Article 4 and to provide notice to the Corporation of the transfer.

122.    The IPR provides the following definition of "Necessary Claims":

(e) "Necessary Claims" shall mean claims of a patent or patent application throughout the world that (a) are owned or controlled by a Member or its Affiliates now or at any future time; and (b) are necessarily infringed by implementing those relevant portions of the Specification required for certification within the bounds of the Scope (as defined in Section 1(g)), wherein a claim is necessarily infringed only when it is not possible to avoid infringing the claim because there is no commercially reasonable non-infringing alternative for implementing such relevant portions of the Specification required for certification within the bounds of the Scope. Notwithstanding the foregoing sentence, Necessary Claims do not include any claims: (i) other than those set forth above even if contained in the same patent or patent application as Necessary Claims; (ii) that read solely on any implementations of any portion of the Specification that are not within the bounds of the Scope; or (iii) that, if licensed, would require consent from, and/or a payment of royalties by the licensor to unaffiliated third parties.

123.    The IPR policy further specifies that any "transfer by a Member … to a third party of a patent having Necessary Claims shall be subject to" Section 3.5 of the IPR Policy:

### SECTION 3.5.   TRANSFER OF NECESSARY CLAIMS

Any transfer by a Member or its Affiliates to a third party of a patent having Necessary Claims shall be subject to: (a) the terms and conditions of this Policy; and (b) the agreement to grant licenses by the Member and its Affiliates to other Members, their Affiliates and implementers of the Specification, pursuant to Section 3.2 and Section 3.3 of this Policy.

124.    One or more third party Members of the Wi-Fi Alliance have alleged that, under certain interpretations, claim 13 of the '714 Patent is a Necessary Claim of the Wi-Fi Alliance Wi-Fi 6 Test Plan and that seeking an ITC exclusion order against products that implement the Wi-Fi 6 Test Plan is a breach of the Wi-Fi Alliance IPR Policy.

125.    Claim 14 of the '714 Patent is a dependent claim that depends on independent claim 13.

126.    On information and belief, Plume is a Member of the Wi-Fi Alliance.

127.    On information and belief, Netgear has never asserted claims 13-14 of the '714 Patent are essential to, or necessarily infringed by, any industry standard.

128.    Estelgia is not a Member of the Wi-Fi Alliance.  Estelgia has never asserted claims 13-14 of the '714 Patent are essential to, or necessarily infringed by, any industry standard.

129.    Claim 13-14 of the '714 Patent are not "Necessary Claims" under the Wi-Fi Alliance's IPR Policy.

130.    Estelgia does not have any licensing obligations under the Wi-Fi Alliance's IPR Policy relating to claims 13-14 of the '714 Patent.

131.    Estelgia filed an action against Plume at the International Trade Commission ("ITC"), seeking to exclude one or more of Plume's products from importation into the United States market due to infringement of several patents, including claim 13-14 of the '714 patent.

132.    On information and belief, Plume's products that would be subject to exclusion include products that implement certain Wi-Fi Alliance specifications, such as the Wi-Fi 6 Test Plan.

133.    There is a case or controversy of sufficient immediacy, reality, and ripeness to warrant the issuance of a declaratory judgment.

134.    Estelgia seeks a declaration that claim 13-14 of the '714 Patent are not "Necessary Claims" under any Wi-Fi Alliance Test Plan and that Estelgia has no obligations under the Wi-Fi Alliance IPR Policy to license claim 13-14 of the '714 Patent for Plume products.

## PRAYER FOR RELIEF

**WHEREFORE**, Estelgia respectfully requests the following relief:

(A)    The entry of judgment in favor of Estelgia, and against Plume, that Plume has infringed and continues to infringe, induce the infringement of, and contributed to the infringement of, the Asserted Patents, and that Plume's infringement was willful;

(B)     A permanent injunction prohibiting Plume and its officers, agents, representatives, assigns, licensees, distributors, employees, related entities, and all those acting in privity or acting in concert with them from:

    a.   infringing, inducing, or contributing to the infringement of the Asserted Patents; and

    b.   soliciting any new business or new customers using any information or materials derived from infringing the Asserted Patents;

(C)     An award of monetary damages, to be obtained from any and all of Plume's assets, sufficient to compensate Estelgia for Plume's patent infringement, with pre and post judgment interest, pursuant to at least 35 U.S.C. § 284.

(D)     An award of enhanced damages, to be obtained from any and all of Plume's assets, of three times the amount found or assessed for Plume's patent infringement, pursuant to 35 U.S.C. § 284, including prejudgment interest on such damages.

(E)     An accounting and/or supplemental damages for all damages occurring after the period for which discovery is taken, and after discovery closes, through the Court's decision regarding the imposition of a permanent injunction;

(F)     The entry of judgment in favor of Estelgia, and against Plume, that this is an exceptional case within the meaning of 35 U.S.C. § 285, and Estelgia is therefore entitled to reasonable attorneys' fees; and

(G)     An award of Estelgia's costs and expenses of this suit as a prevailing party, to be obtained from any and all of Plume's assets;

(H)     A declaratory judgment confirming that claim 13-14 of the '714 Patent are not "Necessary Claims" under any Wi-Fi Alliance Test Plan and Estelgia has no

obligations under the Wi-Fi Alliance IPR Policy to license claim 13-14 of the '714

Patent for Plume products.

(I)     Such further relief as the Court deems just and proper.

### JURY DEMAND

Estelgia respectfully demands a trial by jury on all issues so triable.

Dated: May 16, 2025                                Respectfully submitted,

Of Counsel:                                        FARNAN LLP

Kevin C. Wheeler                                   */s/ Michael J. Farnan*
Michael A. David                                   Brian E. Farnan (Bar No. 4089)
**LATHAM & WATKINS LLP**                           Michael J. Farnan (Bar No. 5165)
555 Eleventh Street, NW, Suite 1000                919 North Market Street, 12th Floor
Washington DC 20004                                Wilmington, DE 19801
Telephone: (202) 637-2200                          (302) 777-0300
Facsimile: (202) 637-2201                          bfarnan@farnanlaw.com
kevin.wheeler@lw.com                               mfarnan@farnanlaw.com
michael.david@lw.com
                                                   *Attorneys for Plaintiff Estelgia LLC*
Charles H. Sanders
**LATHAM & WATKINS LLP**
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
charles.sanders@lw.com

Blake R. Davis
Amit Makker
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Phone: (415) 391-0600
blake.davis@lw.com
amit.makker@lw.com